IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE MAYAN, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>RYDBOM EXPRESS, INC. and DOUGLAS H. RYDBOM,<br><br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | COLLECTIVE ACTION (CIVIL)<br><br>No. 07-2658<br><br>The Honorable Lawrence F. Stengel<br><br>NON-JURY TRIAL |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Rydbom Express, Inc. and Douglas H. Rydbom (collectively referred to as "Rydbom") hereby submit this Reply Memorandum of Law to respond to the arguments raised in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc. 87). For purposes of the within reply, Rydbom will focus exclusively on the time period during which the relevant provisions of Pub. L. No. 109-59, 119 Stat. 1144, otherwise known as the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") were in effect (i.e. after August 10, 2005, but before June 6, 2008).

## I. INTRODUCTION

As explained in Rydbom's initial memorandum, individuals are exempt from overtime pursuant to 29 U.S.C. § 213(b)(1) (the "Motor Carrier Act Exemption") if they are "employees" of a "motor carrier" within the meaning of 49 U.S.C. § 31502(b)(1). Plaintiffs admit that they were "employees" of Rydbom within the meaning of § 31502(b)(1) prior to the enactment of SAFETEA-LU (Pl.'s Mem. Opp'n p. 11), and Plaintiffs further admit that Rydbom was (and is) a "motor carrier" subject to the Secretary of Transportation's jurisdiction both before and after the enactment of SAFETEA-LU (id. p. 7.) The *purely legal* issue that Plaintiff disputes is whether he, and those similarly situated, were "employees" within the meaning of § 31502(b)(1) after SAFETEA-LU narrowed the definition of "motor carrier."

Plaintiff argues that SAFETEA-LU's change to the definition of "motor carrier" in 49 U.S.C. § 13102(14)—which is the *only* change made by SAFETEA-LU relevant to the case at bar—somehow also changed the term "employees" in § 31502(b)(1). Specifically, Plaintiff argues that, by adding the word "commercial" before the phrase "motor vehicle" in the definition of "motor carrier," the term "employee" in § 31502(b)(1) was *effectively* (not actually) changed to mean only those employees whose activities affect the safety of operation of *commercial* motor vehicles in interstate commerce. (Pl.'s Mem. Opp'n p. 9.) Plaintiff's argument must be rejected because it reads far too much into SAFETEA-LU's limited change to the Motor Carrier Act. Congress did not intend for SAFETEA-LU, which did not change the text of § 31502(b)(1), to alter the term "employees" in any way. Moreover, no legitimate authority supports Plaintiff's argument that SAFETEA-LU changed the meaning of "employees" in § 31052(b)(1).

## II. REPLY

### A. Congress Did Not Intend for Its Change to the Definition of "Motor Carrier" in 49 U.S.C. § 13102(14) to Change the Term "Employees" in 49 U.S.C. § 31502(b)(1).

Because "[s]afety ... is the paramount interest" of the Motor Carrier Act Exemption, Sinclair v. Beacon Gasoline Co., 447 F. Supp. 5, 9 (D. La. 1976), the term "employees" in 49 U.S.C. § 31502(b)(1) has, for more than sixty years, meant all employees whose activities "affect the safety of operation" of a motor carrier, see United States v. Am. Trucking Ass'ns, Inc., 310 U.S. 534, 553 (1940); Levinson v. Spector Motor Serv., 330 U.S. 649, 671-72 (1947), or "affect the safety of operation of motor vehicles in interstate or foreign commerce," see Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 708 (1947).[1] Plaintiff urges this Court to reject this long-established meaning, however, and find that, under the limited (and short-lived) change made by SAFETEA-LU, the term "employees" meant only those individuals whose activities affected the safety of operation of *commercial* motor vehicles in interstate commerce. (Pl.'s Mem. Opp'n p.

[1] The statute at issue in these cases was Section 204 of the Motor Carrier Act of 1935, the statutory predecessor to 49 U.S.C. § 31502.

9.) Plaintiff's argument, which is based solely on Congress's amendment of the definition of "motor carrier" in a different section of the Motor Carrier Act, must be rejected.

When legislation is claimed to have fundamentally altered a decades-old interpretation of a particular statutory provision, "a court should not accept that [new] interpretation without express statutory language or at least legislative history reflecting congressional intent to effectuate the change." United States v. Abraham, 29 F. Supp. 2d 206, 211-12 (D.N.J. 1998); see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). Here, there is absolutely no indication that Congress intended for SAFETEA-LU's change to the definition of "motor carrier" in 49 U.S.C. § 13102(14) to somehow alter the judicially-established meaning of "employees" in § 31502(b)(1) in any way, let alone limit that term to mean only employees who operate commercial motor vehicles. Therefore, because Congress did not intend to change the meaning of "employees" in § 31502, this Court should not construe SAFETEA-LU as making such a change. E.g., United States v. Vickery, 199 F. Supp.2d 1363, 1369 (N.D. Ga. 2002) (noting that "a statute must be construed to avoid unintended or absurd results").

Consistent with this lack of congressional intent, the "express statutory language" also indicates no departure from the established meaning of "employees" in 49 U.S.C. § 31502(b)(1). As Plaintiff admits, Congress changed only the definitions of "motor carrier" and "motor private carrier" in 49 U.S.C. § 13102 by simply adding the word "commercial" before the term "motor vehicle." (Pl.'s Mem. Opp'n p. 8.) Nothing in that limited change suggests, either expressly or impliedly, an intent to change the term "employees" in § 31502(b)(1). In fact, because Congress chose to amend the language of § 13102, but left § 31502(b)(1) intact, it must be presumed that Congress intended to preserve the long-established meaning of the term "employees," i.e. those employees whose activities affect the safety of operation of *motor vehicles*—not commercial motor vehicles—in interstate commerce. See In re Air Crash Disaster Near Peggy's Cove, 210

F. Supp. 2d 570, 575 (E.D. Pa. 2002) ("[W]hen Congress amends an existing statute, a court must presume that any part of the statute left intact reflects Congress's intent to preserve the prevailing judicial interpretation of that portion."); cf. Ankenbrandt v. Richards, 504 U.S. 689, 700-01 (1992) ("With respect to such a longstanding and well-known construction of the diversity statute, and where Congress made substantive changes to the statute in other respects, ... we presume, absent any indication that Congress intended to alter this exception, ... that Congress adopted that interpretation when it reenacted the diversity statute.") (citations and quotations omitted).

Nor is there any legislative history reflecting an intent by Congress to alter the established meaning of "employees" in 49 U.S.C. § 31502(b)(1). As noted in Rydbom's first memorandum, the extent of SAFETEA-LU's legislative history is as follows: "This section harmonizes the jurisdictional reach of the commercial statutes by eliminating the requirement for motor carriers to register if they are not subject to the Federal motor carrier safety regulations." See H.R. Rep. No. 109-203 at Sec. 4142. The stated purpose of SAFETEA-LU, of course, has nothing to do with the meaning of "employees" in § 31502(b)(1). (And, by all accounts, SAFETEA-LU's impact on the Motor Carrier Act Exemption was entirely unintended.)

Finally, and perhaps most importantly, recent legislative action shows that Congress knows how to use "express statutory language" to change the scope of "employees" covered by the Motor Carrier Act Exemption. As explained at length in Rydbom's first memorandum, the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572 ("Technical Corrections Act"), specifically removes employees who do not affect the safety of operation of commercial motor vehicles (i.e. vehicles weighing at least 10,001 pounds) from the Motor Carrier Act Exemption after June 6, 2008. See Technical Corrections Act § 306(a) ("Beginning on [June 6, 2008], section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) shall not apply to [an employee of a motor carrier who performs duties on motor vehicles weighing 10,000 pounds or less] notwithstanding section 13(b)(1) of that Act (29 U.S.C.

213(b)(1).”). This is exactly the type of clear legislative action that should be required before Congress is found to have altered a “prevailing judicial interpretation” that has been applied by federal courts for over sixty years. Plaintiff, however, would have this Court infer that Congress, by changing the definition of a different word in a different provision of the Motor Carrier Act, also changed the long-established meaning of “employees” in 49 U.S.C. § 31502(b)(1). Because all indications are that Congress clearly did not intend such a significant change when it passed SAFETEA-LU, Plaintiff's argument—based entirely on the unsound premise that this otherwise unaffected statutory language was “effectively” changed—must be rejected.

**B. There is No Authority for Plaintiff's Argument that SAFETEA-LU Changed the Long-Established Meaning of “Employees” in 49 U.S.C. § 31502(b)(1).**

Plaintiff flatly misrepresents the state of existing “authority” to the Court, claiming that his interpretation “is consistent with the view expressed by [the Department of Labor and] district courts that have evaluated the scope of the [Motor Carrier Act Exemption] after the August 10, 2005 enactment of SAFETEA-LU.” (Pl.'s Mem. Opp'n p. 10.)

**1. The Department of Labor interpretations cited by Plaintiff are not authoritative and are contrary to the Department's own regulations.**

As Rydbom has previously explained, Department of Labor (“DOL”) interpretations as to the scope of the Motor Carrier Act Exemption are not authoritative because it is the Department of Transportation, not the DOL, that is granted the power to interpret 49 U.S.C. § 31502.[2] (See

[2] To support his claim, Plaintiff relies on: (1) a DOL Field Assistance Bulletin, dated May 23, 2007, i.e. almost two years after the enactment of SAFETEA-LU; and a DOL Fact Sheet, dated July 2008, i.e. after the enactment of the Technical Corrections Act. Regarding the latter document, it must be noted that the Fact Sheet is an inaccurate portrayal of the law as it existed (and continues to exist) as of July 2008. The Fact Sheet states that a “motor carrier” is one who provides “commercial motor vehicle transportation for compensation.” This, quite obviously, is incorrect. As of June 6, 2008 (i.e. upon enactment of the Technical Corrections Act), a “motor carrier” is “a person providing *motor vehicle* transportation for compensation.” 49 U.S.C. § 13102(14) (emphasis added). The “Fact Sheet,” therefore, is anything but. Moreover, regarding the Field Assistance Bulletin, the U.S. Court of Appeals for the Third Circuit has previously noted (in the context of a similar document) that such documents would “lack authority, even if the DOL had authority to interpret the [Motor Carrier Act], which it does not,” because it lacks “the formality and weight that would merit judicial deference.” Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 252 (3d Cir. 2005). “[I]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference.” Id. (quoting Christensen v. Harris County, 529 U.S. 576, 587 (2000)). Because informal documents (like the DOL's Field Assistance Bulletin) fall into that category, they are not entitled to *Chevron* deference. Nor would the Field Assistance Bulletin, or other documents like it, even be entitled to the lesser degree

Defs.' Mot. Summary J. p. 5 n.3.) However, even assuming that the DOL's regulations could be authoritative, the informal guidance upon which Plaintiff relies clearly is not.

The informal DOL interpretations lack both the force of law and sufficient reasoning or analysis to be persuasive. More importantly, however, these informal interpretations deserve no deference because they are *contrary to the DOL's own regulations*. To that end, it is axiomatic that an agency's interpretation carries no weight when it is inconsistent with the agency's own regulation. See Royal Siam Corp. v. Chertoff, 484 F.3d 139, 145-46 (1st Cir. 2007) ("Courts should withhold ... deference ... if the agency's interpretation is 'plainly erroneous or inconsistent with the regulation.'") (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)). Here, notably, during the entire time that SAFETEA-LU was in effect, the DOL's regulation purporting to interpret the scope of the Motor Carrier Act Exemption provided that the exemption applies to employees who engage in activities "affecting the safety of operation of *motor vehicles*," 29 C.F.R. § 782.2 (emphasis added)—not those affecting *commercial motor vehicles*, as the informal interpretations (and Plaintiff) attempt to assert. Thus, the deference that is owed to the DOL's interpretation of the Motor Carrier Act Exemption, if any, must be given to 29 C.F.R. § 782.2, not the informal (and erroneous) guidance cited by Plaintiff. Indeed, if the DOL truly believed that SAFETEA-LU required a different interpretation, it certainly could have amended 29 C.F.R. § 782.2 in the nearly three years that passed between the enactment of SAFETEA-LU and the enactment of the Technical Corrections Act. It did not.

### 2. Case Law Is Not "Consistent" with Plaintiff's Argument.

Notably, Plaintiff makes no attempt to distinguish the instant matter from Tidd v. Adecco USA, Inc., No. 07-11214, 2008 U.S. Dist. LEXIS 69825 (D. Mass. Sept. 17, 2008), the only case that deals directly with the issue presented by Rydbom's Motion for Summary Judgment.[3]

---

of deference called for by Skidmore v. Swift, 323 U.S. 134 (1994), because, like the document at issue in Packard, the Bulletin "provide[s] no reasoning or analysis that a court could properly find persuasive." Packard, 418 F.3d at 253.

[3] In a footnote, Plaintiff argues that Tidd did not address the second "prong" of 29 C.F.R. § 782.2, i.e. whether the employees at issue affected the safety of operation of motor vehicles. (Pl.'s Mem. Opp'n p. 7 n.4.) Notwithstanding

Rather, he erroneously asserts or implies that seven courts have expressed views that are similar to his interpretation of the Motor Carrier Act Exemption under SAFETEA-LU. Contrary to Plaintiff's assertion, there is no valid, legal authority (persuasive or otherwise) declaring that SAFETEA-LU, merely by changing the definition of "motor carrier," somehow altered the long-established meaning of the term "employees."

First, the court in Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692 (S.D. Ohio 2006), held that SAFETEA-LU had no application because its amendments did not apply retroactively. Musarra, 454 F. Supp. 2d at 703. Notwithstanding this conclusion, the Musarra court dropped a footnote to speculate about the possible effects of SAFETEA-LU: "After the passage of SAFETEA-LU ... vehicles that were previously exempt under the other definition of 'motor vehicle' are no longer exempt because they are not 'commercial motor vehicles.'" Id. at 701 n.19. The Musarra court's dicta demonstrates obvious confusion as to the legal principles involved because, as previously discussed, the Motor Carrier Act Exemption (both before and after the enactment of SAFETEA-LU) applies to "employees" of "motor carrier[s]," and does not apply to "vehicles." Indeed, SAFETEA-LU changed the definition of "motor carrier," not the definition of "motor vehicle." Because the Musarra decision misses this basic point, it would be entitled to no persuasive effect, even if it had addressed the question presented here (i.e. the presence of a mixed fleet of motor vehicles), which it did not.[4]

---

the fact that the DOL's regulation is not authoritative with respect to the scope of the Motor Carrier Act Exemption (and that the plain language of the regulation itself exempts from overtime those employees affecting the safety of operation of motor vehicles—not commercial motor vehicles), it should be noted that the Tidd court did, in fact, consider such an argument, but ultimately rejected it as untenable. To be sure, it is the text of 49 U.S.C. § 31502 that controls this issue, not an ad hoc interpretation of an otherwise non-authoritative regulation. According to the court, "[t]he plaintiffs' interpretation would effectively rewrite section 31502 of Title 49 to make an individual employee's daily work the determining factor as to the Secretary of Transportation's regulatory authority, rather than the specified characteristic of the employer. As noted above, the FLSA does hinge the applicability of some exemptions on what the employee does. It hinges others on what the employer does. The Motor Carrier Exemption is more like the second method than the first, even after the SAFETEA-LU amendment." Tidd, 2008 U.S. Dist. LEXIS 69825 at *12.

[4] Likewise, the courts in King v. Asset Appraisal Servs., Inc., 470 F. Supp. 2d 1025, 1030-31 (D. Neb. 2006), and Kautsch v. Premier Comms., 502 F. Supp. 2d 1007, 1012 (W.D. Mo. 2007), simply parroted Musarra's misplaced dicta, which was also just dicta, as neither court was confronted with the issue of whether the plaintiffs could be considered "employees" of a "motor carrier" under 49 U.S.C. § 31052(b)(1). In fact, both of these cases, along with Dell'Orfrano v. IKON Office Solutions, Inc., No. 05-245, 2006 U.S. Dist. LEXIS 61563, *5-6 (M.D. Ga. Aug. 29,

Second, Padjuran v. Aventura Limousine & Transp. Serv., Inc., 500 F. Supp. 2d 1359 (S.D. Fla. 2007), did not decide the issue presented here. Rather, the Padjuran court's holding was ultimately based on the defendants' inability to establish, for purposes of their motion to dismiss, that the plaintiff had "engaged in activities directly affecting the safety of operation of motor vehicles in interstate or foreign commerce." Padjuran, 500 F. Supp. 2d at 1363. The court did not determine whether the weight of the vehicle operated or driven by an individual mattered after SAFETEA-LU because it was not presented with the argument (presented here) that such weight is wholly irrelevant to application of the Motor Carrier Act Exemption (at least prior to June 6, 2008) so long as the employer maintains its status as a "motor carrier" and thus, remains subject to the Secretary of Transportation's jurisdiction. Rather, the defendants in Padjuran had, themselves, suggested that the weight of the particular vehicle driven by the plaintiff was somehow relevant and attempted to show that the plaintiff had driven a vehicle weighing more than 10,000 pounds. The court ruled only that it could not properly consider the defendants' evidence about vehicle weight on a motion to dismiss. Id. Thus, Pudjuran cannot be regarded as persuasive authority because the Pudjuran court simply did not consider the argument that Rydbom presents to this Court.[5] See, e.g., Webster v. Fall, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not be considered as having been so decided as to constitute precedents.").

The remaining two cases cited by Plaintiff, Vidinliev v. Carey Int'l, Inc., No. 07-762, 2008 U.S. Dist. LEXIS 82867 (N.D. Ga. Oct. 1, 2008), and Horn v. Digital Cable & Comms.,

2006), did not even deal with § 31502(b)(1). Instead, they dealt only with § 31502(b)(2), which establishes the Secretary of Transportation's authority to set maximum hours of service for "motor private carriers," rather than "motor carriers." Unlike a "motor carrier," a "motor private carrier" does not possess its carrier status at all times. Given the different definition of "motor private carrier"—which necessarily requires a circumstance-specific determination—cases addressing "motor private carrier" status are simply not applicable in cases involving "motor carriers."

[5] If the Pudjuran court could be said to have adopted any view on this issue, however, it would be Rydbom's. The Pudjuran court specifically (and rightfully) noted that, under the SAFETEA-LU amendments, the Motor Carrier Act Exemption applied to those employees of a motor carrier who are "engaged in activities that directly affect the safety of operation of motor vehicles"—not commercial motor vehicles—"in interstate or foreign commerce." Padjuran, 500 F. Supp. 2d at 1363 (citing 29 C.F.R. § 782.2).

Inc., No. 06-325 (N.D. Ohio Nov. 18, 2008) (attached to Pl.'s Mem. Opp'n as Appx. C), are also not controlling on the issue of whether employees of a motor carrier with a mixed fleet of vehicles were "employees" of a "motor carrier" for purposes of 49 U.S.C. § 31502. The court in Vidinliev held that the Technical Corrections Act cannot be applied retroactively and, as a result, the time period from August 10, 2005 to June 6, 2008 (i.e. the duration of SAFETEA-LU's impact on the Motor Carrier Act Exemption) must be separately considered when determining an employer's liability (if any) to pay overtime wages. Vidinliev, 2008 U.S. Dist. LEXIS 82867 at *26-27. This same holding, which Rydbom does not dispute, was adopted by the court in Horn. Horn, No. 06-325 at 9.[6] The Vidinliev court went on to consider the time frame covered by the SAFETEA-LU amendments. In doing so, however, the court erroneously stated that the DOL regulations are controlling (they are not) and proceeded, without pointing to any authority or legal basis whatsoever, to substitute the term "commercial motor vehicle" for "motor vehicle" in those regulations. Vidinliev, 2008 U.S. Dist. LEXIS 82867 at *28-29. For the reasons discussed herein, as well as in Rydbom's first memorandum, the Vidinliev court's holding clearly runs contrary to long-established tenets of statutory interpretation and principles of proper regulatory deference. Accordingly, both Vidinliev and Horn are neither controlling nor persuasive to the issue under review.

Moreover, the Court will note that the defendants in each of the cases cited by Plaintiff are obviously not transportation/delivery companies like Rydbom. Dell'Orfano, 2006 U.S. Dist. LEXIS 61563 at *2 (photocopy courier services); Horn, No. 06-325 at 2 (cable television delivery and installation); Kautsch, 502 F. Supp. 2d at 1009 (satellite television delivery and installation); King, 470 F. Supp. 2d at 1027 (asset appraisal services); Musarra, 454 F. Supp. 2d at 694-95 (satellite television delivery and installation); Padjuran, 500 F. Supp. 2d at 1360 (limousine services); Vidinliev, 2008 U.S. Dist. LEXIS 82867 at *3 (limousine services).

[6] Moreover, the issue in Horn, like the cases noted, supra, revolved around the defendant's status as a "motor private carrier," and not a "motor carrier." Horn, No. 06-325 at 3. It should also be noted that, in Horn, the evidence or record revealed that, unlike Rydbom, the defendant did not operate any motor vehicles weighing more than 10,000 pounds. Id.

Indeed, the only case dealing with the specific issue under review, and the only case with facts virtually identical to the case at bar, is the Tidd decision, which has been summarized at length in Rydbom's first memorandum (and is conspicuously absent from Plaintiff's Memorandum). Like the court in Tidd, this Court should grant the instant Motion for Summary Judgment with respect to Plaintiff's claim for overtime wages from August 10, 2005 to June 6, 2008. And, for the reasons previously set forth in Rydbom's first memorandum of law, this Court should also grant the instant Motion for Summary Judgment with respect to Plaintiff's claim for overtime wages after June 6, 2008.

## III. CONCLUSION

For all of the foregoing reasons, and for the reasons previously set forth in their first memorandum of law, Defendants Rydbom Express, Inc. and Douglas H. Rydbom respectfully request that this Court grant their Motion for Summary Judgment and dismiss all claims for overtime wages asserted by Plaintiff Kyle Mayan and the fifty-six opt-in Plaintiffs.

Respectfully submitted,

By: */s/ Todd J. Shill*

Todd J. Shill, Esq. (ID No. 69225)
John R. Martin, Esq. (pro hac vice)
Rhoads & Sinon LLP
One South Market Square, 12th Floor
P. O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731
tshill@rhoads-sinon.com
jmartin@rhoads-sinon.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2008, a true and correct copy of the foregoing "Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment" was filed and served electronically on the following:

Peter Winebrake
THE WINEBRAKE LAW FIRM, LLC
Twining Office Center, Suite 114
715 Twining Road
Dresher, PA 19025
pwinebrake@winebrakelaw.com

I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system, and that parties may access this filing through the Court's system.

*/s/ Todd J. Shill*