**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KYLE MAYAN, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-2658 |
| | : | |
| RYDBOM EXPRESS, INC. | : | |
| and | : | |
| DOUGLAS H. RYDBOM, | : | |
| Defendants | : | |

**M E M O R A N D U M**

STENGEL, J.                                              September 30, 2009

A group of delivery drivers contend that their employer failed to pay them

overtime compensation in violation of the Fair Labor Standards Act ("FLSA")[1] and the

Pennsylvania Minimum Wage Act ("PMWA").[2] See 29 U.S.C. § 207 (2006) (requiring

employers to provide overtime compensation); 43 PA. STAT. ANN. 333.104(c) (West

2008) (same).  Both parties have moved for summary judgment.  Upon careful

consideration of the parties' memoranda and applicable case law, I will grant in part and

deny in part the defendant's motion, and deny the plaintiffs' motion.  The defendants

---

[1] The Fair Labor Standards Act was intended to address existing "labor conditions [that were] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. § 202 (2006). Its purposes are to protect workers from substandard wages and oppressive working hours. See Cruz v. Chesapeake Shipping, Inc., 932 F.2d 218, 226 (3d Cir. 1991).

[2] Similar to the FLSA, the declared policy of the PMWA is to improve "wages [that are] unreasonably low and not fairly commensurate with the value of the services rendered." 43 PA. CONS. STAT. ANN. § 333.101 (West 2008).  To that end, the PMWA requires employers to pay a statutorily set minimum wage and overtime for hours worked in excess of forty hours in a workweek. Id. § 333.104.

have also moved to decertify, and I will deny that motion.

## I. Background

Rydbom Express, Inc. is a parcel delivery company based in Middletown, Pennsylvania.  (See Pls.' Mem. for Summ. J. at 2 (Document #79); Def.'s Mem. for Summ. J. at 1 (Document #76).)  The company also operates out of distribution terminals in Reading and Lancaster, Pennsylvania.  (Pls.' Mem. for Summ. J. at 2; Def.'s Mem. for Summ. J. at 1.)

The plaintiffs are current and former Rydbom Express drivers.  They are paid by the hour to deliver packages to residences and businesses.  The majority of these packages originate outside of Pennsylvania.  At no time during the relevant period did Rydbom Express employees receive overtime compensation.  Instead, any work time exceeding forty hours in a given workweek was compensated at the employee's regular rate of pay. The plaintiffs believe that Rydbom Express violated the Fair Labor Standards Act by failing to provide them overtime compensation; Rydbom Express believes that another statute, the Motor Carrier Act of 1935, 49 U.S.C. § 31502, exempts it from providing overtime compensation.

Rydbom Express' delivery fleet includes about 100 vehicles.  Approximately one-third have a gross vehicle weight over 10,001 pounds; the remainder are below 10,000 pounds.  Which type of vehicle a driver operated on a given day depended on the size, weight, and other characteristics of his delivery load.  Rydbom Express had no control

over these variables.  A driver might drive a vehicle weighing more than 10,000 pounds on one day and then a vehicle weighing less than 10,000 pounds the next day.  Consequently, all drivers were trained to operate *any* of the vehicles in the fleet.  Rydbom Express did not record which vehicles a particular driver operated on a daily basis.  The only records Rydbom Express has offered on this point are the fuel records showing which driver fueled a particular vehicle on a certain day.

Kyle Mayan, a former employee, commenced this suit to recover overtime compensation.  The FLSA action was brought as a collection action, as provided under 29 U.S.C. § 216(b); the PMWA suit was brought as a class action pursuant to Federal Rule of Civil Procedure 23.  Since notice of this suit was sent out, fifty-six additional Rydbom drivers have opted-in.

## II. Standard of review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" when it could affect the outcome of the case under the governing law.  Id.

3

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must view the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Anderson, 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving

4

party's version of events against the opponent, even if the quantity of the moving party's evidence far outweighs that of its opponent. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. Discussion

I will grant in part and deny in part the defendants' motion, and deny the plaintiff's motion. Many of the material facts in this case are undisputed. The summary judgment arguments turn on the interplay of two federal laws—the Motor Carrier Act and the Fair Labor Standards Act—and a set of statutory changes that generally confused the law in this area.

### A. Relevant law

#### 1. The Motor Carrier Act of 1935

Congress enacted the Motor Carrier Act in 1935. <u>See</u> <u>United States v. Am. Trucking Ass'ns</u>, 310 U.S. 534, 538 (1940) (discussing the purposes and policies of the Motor Carrier Act); <u>see also</u> <u>Maurer v. Hamilton</u>, 309 U.S. 598, 606 (1940) (same). In addition to promoting transportation efficiency and economy, one of the integral goals of this legislation was to ensure the safety of operations on the nation's roads and highways. <u>Am. Trucking</u>, 310 U.S. at 539.

5

To that end, Congress empowered the Secretary of Transportation[3] to "prescribe requirements for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier."  49 U.S.C. § 31502(b).  Section 13102 of the Motor Carrier Act defines "motor carrier" as a "person providing motor vehicle transportation for compensation."  Id. § 13102(12) (2000).  The term "motor vehicle" itself is defined as "a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation."  Id. § 13102(14).  Thus, the Secretary has regulatory authority over "most employees [of a qualifying motor carrier] who drove any type and size of motor vehicle in interstate commerce."  Tews v. Ratzenberger, Inc., 592 F. Supp. 2d 1331, 1343 (D. Kan. 2009) (citing Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692, 701 n.19 (S.D. Ohio 2006)).

## 2. The Fair Labor Standards Act of 1938

Three years later in 1938, Congress passed the Fair Labor Standards Act to ensure "certain minimum labor standards."  Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960).  To this end, the FLSA imposes a financial disincentive on employers seeking to make their employees work overly long hours.  See 29 U.S.C. § 207(a)(1).

―――――――――――――――――

[3] The agency initially charged with enforcing the Motor Carrier Act's provisions was the Interstate Commerce Commission.  When Congress created the Department of Transportation in 1966, it transferred the Commission's duties to the Department.  See Rauenhorst v. U.S. Dep't of Transp., Fed. Highway Admin., 95 F.3d 715, 719 (1996).  To prevent potential confusion, this memorandum will refer only to the Secretary of Transportation or the Department of Transportation.

The law sets a general maximum of forty hours in a workweek for all employees.  Id. Though an employer may require an employee to work more than forty hours, he or she must provide overtime compensation at a rate of one and one-half times the employee's regular rate of pay.  Id.

### 3. The Motor Carrier Act exemption

This general rule is subject to numerous exceptions, the most pertinent being the so-called Motor Carrier Act exemption.[4]  This exemption provides that the overtime provisions of the Fair Labor Standards Act do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  Id. § 213(b)(1) (2000).  In light of this language, the Supreme Court stated that the Motor Carrier Act exemption is triggered by the mere *existence* of the Secretary of Transportation's power to regulate, not the actual exercise of that power.  Levinson v. Spector Motor Serv., 330 U.S. 649, 678 (1947); accord Morris v. McComb, 332 U.S. 422, 434 (1947); Friedrich v. U.S. Computer Servs., 974 F.2d 409, 416 (3d Cir. 1992) (stating that the Secretary of Transportation's decision not to regulate certain classes of vehicles does not strip him of his authority to do so).

---

[4] Exemptions are construed narrowly, against the employer.  Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 180 (3d Cir. 2000).  The employer bears the burden of "plainly and unmistakably" proving that his employees fall within the scope of the exemption.  Friedrich v. U.S. Computer Serv., 974 F.2d 409, 412 (3d Cir. 1992).

The "fundamental test" for determining whether the Secretary of Transportation has jurisdiction to regulate a motor carrier employee is if "the employee's activities affect safety of operation." Levinson, 330 U.S. at 671. If this test is satisfied, the Secretary may regulate an employee's qualifications and maximum hours of service pursuant to Section 31502. When an employee falls under the jurisdiction of the Secretary of Transportation, and is thus subject to the exemption, the Secretary of Labor is prohibited from enforcing the Fair Labor Standards Act's overtime requirements as to that employee.

The Motor Carrier Act, with the related exemption, separates the regulatory authority of the Secretary of Labor from the Secretary of Transportation. After considering the language and legislative history of both acts, the Court concluded that Congress intentionally denied the Secretaries overlapping authority over motor carriers and motor carrier employees. Levinson, 330 U.S. at 662 (stating that Congress attached "primary importance" to ensuring safety of operation of motor vehicles, "even to the corresponding exclusion . . . of certain employees from the benefits of the compulsory overtime pay provisions of the Fair Labor Standards Act"). Stated differently, under the exemption the Secretary of Transportation has limited but exclusive authority over those motor carrier employees whose duties affect safety of operation, and the Secretary of Labor has authority only over the remaining employees (i.e., those who do not affect safety of operation). The duties of drivers affect safety of operation, Levinson, 330 U.S. at 664-65, so drivers employed by motor carriers covered by the Motor Carrier Act are

8

subject exclusively to the authority of the Secretary of Transportation.

**B. The overtime claims**

The parties agree that Rydbom Express has been and continues to be a "motor carrier" subject to the Secretary of Transportation's regulatory authority.  (See Pls.' Opp'n Mem. at 6–7 (Document #87).)  The remaining issue is whether the plaintiffs, as employees of a motor carrier, fall under that same authority.

This seemingly straightforward question is complicated by two acts that changed the language regarding the Secretary of Transportation's authority under the Motor Carrier Act.  The plaintiffs' claims are presented in chronological order according to the language then in effect.

**1. The SAFETEA-LU claims**

On August 10, 2005, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Pub. L. No. 109-59. This act included a provision amending the definition of "motor carrier" by removing the word "motor vehicle" and inserting "commercial motor vehicle" in its place.  A "motor carrier" was defined as "a person providing *commercial motor vehicle* (*as defined in section 31132*) transportation for compensation."  49 U.S.C. § 13102(14) (2005) (emphasis added).  The term "commercial motor vehicle" is defined in pertinent part as:

> [A] self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle--

> (A) has a gross vehicle weight rating or gross vehicle weight of
> at least 10,001 pounds, whichever is greater . . . .

Id. § 31132(1)  With this change, vehicle weight became a key factor for a person or entity seeking to be categorized as a motor carrier.[5]  Those who did not use commercial motor vehicles were no longer considered motor carriers.  Consequently, for those persons or entities who did not operate commercial motor vehicles, the Motor Carrier Act exemption would not apply because the Secretary of Transportation no longer had regulatory authority.  These carriers were now within the Department of Labor's jurisdiction and employers could be required to provide overtime compensation.

Though the parties agree that Rydbom Express was still a motor carrier under the SAFETEA-LU, the remaining question is whether the SAFETEA-LU altered which classes of motor carrier employees were exempt from being paid overtime compensation. This is a close question of statutory interpretation.  Only a handful of courts across the country have considered this issue, and it is a matter of first impression in this circuit. I find as a matter of law that the plaintiffs were subject to the Secretary of Transportation's authority both prior to and following the enactment of the SAFETEA-LU amendments and were not entitled to overtime by action of the SAFETEA-LU amendments.  I will deny the plaintiff's motion as to this part because the statute's plain language does not

---

[5] The definition includes other factors beyond vehicle weight for categorizing commercial motor vehicles.  Those other subsections are inapplicable.

10

affect which motor carrier employees may be exempted, current case law on this exemption issue is persuasive, and the submitted Department of Labor regulations do not compel a different result.

### a. Plain language

Insertion of the SAFETEA-LU amendment into section 31502 results in the following: "The [Secretary] may prescribe requirements for (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, [a person providing commercial motor vehicle transportation for compensation]." The parties agree that the SAFETEA-LU limited the Secretary of Transportation's regulatory power to just those carriers using commercial motor vehicles.

The statutory language did not alter which motor carrier employees may be exempted from the FLSA overtime provisions. Only the Secretary of Transportation's jurisdiction as to types of motor carriers was changed. There is no mention of what kind of motor carrier employee is to be exempted. Indeed, there is no suggestion or other discernible intention to hinge the exemption on whether the employee works on commercial motor vehicles or not. The SAFETEA-LU merely changed the class of motor carriers that may be regulated, not the employees. Accordingly, the plain language does not support an interpretation further limiting the exemption to just those employees using commercial motor vehicles.

### b. Consistency of judicial interpretations

11

My finding is also based on Congress' silence as to the well-developed judicial interpretations of the Motor Carrier Act and the overtime exemption.  My research has revealed no cases that tie the Motor Carrier Act exemption to the type of vehicle the employee operated.  When amending a statute, Congress is presumed to be aware of the federal courts' intervening interpretations of the statute.  If Congress' amendments convey no intent to alter those judicial interpretations, then the court must presume that Congress did not intend a change.  Ankenbrandt v. Richards, 504 U.S. 689, 700–01 (1992) ("With respect to such a longstanding and well-known construction of the diversity statute, and where Congress made substantive changes to the statute in other respects, we presume, absent any indication that Congress intended to alter this exception . . . that Congress 'adopt[ed] that interpretation' when it reenacted the diversity statute."). It is presumed that Congress will be clear if it intends to alter a longstanding statutory interpretation; without that clarity, courts must presume that "the new statute has the same effect as the previous version."  Emerson Elec. Supply Co. v. Estes Express Lines Corp., 451 F.3d 179 (3d Cir. 2006) (quoting Firstar Bank, N.A. v. Faul, 253 F.3d 982, 988 (7th Cir. 2001)); cf. Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot., 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").

Determining which employees of a motor carrier may be exempted has turned on

whether their duties affect the safety of operations.  This is based on longstanding judicial and agency interpretations of the term "employees" as used in the Motor Carrier Act[6] and the exemption.[7]  Neither provision defines or describes who is an "employee": the Secretary of Transportation simply has power to establish regulations for "employees of . . . a motor carrier."  Despite this general language, the Supreme Court did not go so far as to adapt the broad, literal reading granting jurisdiction over any and all employees.  It adopted a narrower interpretation.  Upon consideration of similar regulatory statutes and the history of the Motor Carrier Act itself, the Court concluded that Congress' intent was to grant jurisdiction insofar as necessary "to regulat[e] the motor-carrier industry as a part of the transportation system of the nation."  United States v. Am. Trucking Ass'ns, 310 U.S. 534, 540 (1940); see also id. at 545 (stating that the word "employee" as used in the Motor Carrier Act is to be defined in light of the entire statute).

The Supreme Court's decisions in United States v. American Trucking Associations, 310 U.S. 534 (1940), and Levinson v. Spector Motor Service, 330 U.S. 649 (1947), confirm that the primary question is whether the employee's duties affect the safety of operations.  In American Trucking, the Court considered whether the Motor

_____

[6] The Secretary of Transportation has authority to set requirements for "qualifications and maximum hours of *employees* of . . . a motor carrier."  49 U.S.C. § 31502(b)(1).

[7] "[A]ny employee with respect to whom the Secretary of Transportation has power to establish . . . maximum hours of service pursuant to section 31502 of Title 49" is exempt from the overtime provisions of the Fair Labor Standards Act.  29 U.S.C. § 213(b)(1).

Carrier Act gave the Secretary of Transportation jurisdiction to prescribe regulations for all employees of a motor carrier.  310 U.S. at 538.  The Court first noted that safety of operation was one of Congress' prominent concerns in passing the Motor Carrier Act.  Id. at 539.  In line with this "clear intent," the Secretary of Transportation himself had concluded in various reports and regulations that his authority extended only to those employees whose duties affect operational safety; he could not exercise jurisdiction over all employees.  Id. at 540–41.  Based on its own reading of the Motor Carrier Act and the agency's interpretation, the Court concluded that the Secretary's jurisdiction was not intended to extend beyond those employees whose duties affect safety of operation.  Id. at 553.

Seven years later, the Court reaffirmed these conclusions in Levinson v. Spector Motor Services, 330 U.S. 649.  Unlike the American Trucking plaintiffs whose duties wholly affected the safety of the motor carrier's operations, the Levinson plaintiffs divided their time between activities affecting safety of operations and those not affecting it.  Id. at 660.  The question was whether such employees were still subject to the Secretary's jurisdiction, and the Court concluded that they were.

The opinion placed great emphasis on the Secretary of Transportation's reports. The Court initially recognized that the Secretaries of Transportation and Labor do not have overlapping jurisdiction on these issues.  Id. at 661–62.  The Secretary of Transportation's conclusions were persuasive because Congress had committed the

14

enforcement of the Motor Carrier Act to him, and the Secretary's reports and regulations issued under the law "thoroughly and expertly" addressed the safety of operation issues. Id. at 662.

The Court concluded that an employee whose duties only partially affect safety of operations may still be exempted by virtue of the Secretary of Transportation's continuing jurisdiction. Reviewing the Secretary's decisions on factually analogous issues,[8] the Court noted that he retained jurisdiction even when only a part of the driver's activities affected safety of operations. Id. at 666–68. Even if the employee's duties were split, that employee still had some effect on safety. Because of the Secretary's "long record of practical experience" and its "responsibility for the enforcement and administration of [the Motor Carrier Act]," the Court gave "special consideration" to those conclusions. Id. at 672.

For decades after the Levinson and American Trucking decisions, the dividing line continues to be whether the employee affects safety of operations. See, e.g., Troutt v. Stavola Bros., Inc., 107 F.3d 1104 (4th Cir. 1997); Klitzke v. Steiner Corp., 110 F.3d 1465 (9th Cir. 1997); Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022 (10th Cir. 1992); Moore v. Universal Coordinators, Inc., 423 F.2d 96 (3d Cir. 1970); Dauphin v. Chestnut Ridge Transp., Inc., 544 F. Supp. 2d 266 (S.D.N.Y. 2008). This analysis is in

---

[8] The Court discussed the Secretary's reports regarding the regulation of farm truck drivers and bakery driver-salesmen, two classes of employees whose work continued to be regulated despite the fact they only partially affected safety of operation. 330 U.S. at 666–69.

harmony with Congress' settled practice of delegating authority to the Secretary of Transportation for the "regulation of transportation employees in matters of *movement and safety only*." Am. Trucking, 310 U.S. at 544–45 (emphasis added).

Given the durable nature of this interpretation, Congress may be considered to have been aware of the exact scope of the exemption. When it altered the definition of motor carrier, Congress also had an opportunity to change which motor carrier employees could be exempted. Reading the SAFETEA-LU language, I find that Congress did not do so. I perceive no intent, explicit or implicit, to make such a change. Absent clearer legislative language invalidating the federal courts' longstanding interpretations on this issue, I decline to read in that intent.

### c. Regulations

The plaintiffs argue that the Department of Labor regulations on the matter compel a different result. (See Pls.' Opp'n Mem. at 6–14.) 29 C.F.R. § 782.2(a) provides a two-part test for determining whether a particular employee falls under the Motor Carrier Act exemption. First, the employer must show that it is a carrier whose activities are subject to the Secretary of Transportation's jurisdiction under the Motor Carrier Act. 29 C.F.R. § 782.2(a) (2006). As discussed above, the parties agree that Rydbom Express was a motor carrier. Second, the employer must prove that the employee is "engage[d] in activities of a character directly affecting the safety or operation of motor vehicles" in interstate commerce. Id. This accords with the conclusions reached in Levinson, American

16

Trucking, and their progeny.

The plaintiffs argue that the SAFETEA-LU altered the second prong of this test: the employer must now prove that the employee's activities directly affected the safety or operation of *commercial motor vehicles* to exempt the employer from FLSA overtime provision.  (Pls.' Opp'n Mem. at 9 (citing Vidinliev v. Carey Int'l, Inc., 581 F. Supp. 2d 1281 (N.D. Ga. 2008)).  In other words, a motor carrier employee would not be covered by the Motor Carrier Act exemption if his or her duties affected only non-commercial motor vehicles.[9]

I find this argument unpersuasive.  First, neither the plaintiffs nor the cases they cite sufficiently explain why the regulation's language changed in this way.  The plain language of the SAFETEA-LU only changed who could be considered a "motor carrier." There is no suggestion of a corresponding change in the types of activities an employee

---

[9] I note that the majority of district courts that have considered this issue have ruled that a motor carrier employee is not exempted if his or her duties do not affect commercial motor vehicles.  See, e.g., Tews v. Ratzenberger, Inc., 592 F. Supp. 2d 1331, 1343–46 (D. Kan. 2009) (stating that under the SAFETEA-LU amendment, only those motor carrier employees who had operated commercial motor vehicles could be exempted from the FLSA's overtime provisions); Veliz v. Cintas Corp., 2008 WL 4911238, at *3–4 (N.D. Cal. Nov. 13, 2008) (same); Vidinliev, 581 F. Supp. 2d at 1291–93 (same); Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692, 701 n.19 (S.D. Ohio 2006) (stating the same in *dicta*).  But see Collins v. Heritage Wine Cellars, Ltd., 2008 WL 5423550, at *19–20 (N.D. Ill. Dec. 29, 2008) ("The [SAFETEA-LU] amendments plainly were directed at defining the motor carrier—in this instance, the employer, Heritage—and not the individual employees driving the motor vehicles."); Tidd v. Adecco USA, Inc., 2008 WL 4286512, at *1–4 (D. Mass. Sept. 17, 2008) (finding that the SAFETEA-LU amendment did not "make an individual *employee's* daily work the determining factor as to the Secretary of Transportation's regulatory authority, rather than the specified characteristic of the *employer*").

17

had to engage in to be exempted.[10]

Second, Section 782.2 is only persuasive authority, and this Court is not bound in any way by it in ruling on this matter.  This is because the regulation was promulgated by the Department of Labor, not the Department of Transportation.  The exemption here hinges on the existence of the Secretary of Transportation's regulatory authority.  It is unaffected by the Department of Labor's interpretations of when its own power exists.  The exemption's clear result is that the Secretary of Labor has jurisdiction only when the Secretary of Transportation is not empowered to act.  When creating this jurisdictional dichotomy, Congress charged the Secretary of Transportation with the task of defining and enforcing the Motor Carrier Act.  See Levinson, 330 U.S. at 676–77.  The Secretary of Labor has no administrative or interpretive powers under the act.  As courts have stated, the Department of Labor "cannot interpret the [Department of Transportation's] power under the [Motor Carrier Act] to expand the jurisdiction of the [Fair Labor Standards Act]."  Friedrich v. U.S. Computer Servs., 974 F.2d 409, 411 n.3 (3d Cir. 1992); accord Levinson, 330 U.S. at 684 ("The fundamental and ever recurring difficulty with the [Department of Labor's] interpretation of the scope of [Fair Labor Standards Act overtime provisions] is that to the extent [it] expands [its] jurisdiction . . . [it] must reduce the jurisdiction of the [Department of Transportation] under the Motor Carrier Act,

_____

[10] It should also be noted that section 782.2 represents the Department of Labor's interpretation of controlling judicial and agency decisions.  It was not formally amended after the SAFETEA-LU's enactment.  Consequently, it is useful for analysis only insofar as any subsequent statutory amendments are accurately incorporated.

whereas [it] has no authority to do so."); <u>Packard v. Pittsburgh Transp. Co.</u>, 418 F.3d 246,

251 n.5 (3d Cir. 2005).  Consequently, Section 782.2 is persuasive at best, and the court is

not bound by it.

Finally, the reasoning applied in the cases that have relied on Section 782.2 to

conclude that the SAFETEA-LU introduced a vehicle-based exemption standard for

employees is unpersuasive.  These cases mechanically applied the regulation without

considering the SAFETEA-LU's language as well.

One of the leading decisions in this string of cases is <u>Vidinliev v. Carey</u>

<u>International, Inc.</u>, 581 F. Supp. 2d 1281 (N.D. Ga. 2008).  In <u>Vidinliev</u>, the court

properly noted that "[t]he SAFETEA-LU changed the definition of motor carrier, but

otherwise left the motor carrier exemption completely intact."  <u>Id.</u> at 1291.  Because the

insertion of "commercial motor vehicle" altered the motor carrier definition, not all motor

carriers were still exempt.

The court then turned to 29 C.F.R. § 782.2(a).  Upon concluding that the

regulation was "an appropriate baseline" for determining the full effect on the exemption,

the court replaced all instances of "motor vehicle" with "commercial motor vehicle."  <u>Id.</u>

at 1292.  With that substitution, the second part of the Section 782.2(a) test requires that

the employees "engage in activities of a character directly affecting the safety of

operation of [*commercial*] *motor vehicles*."  <u>Id.</u> at 1292 (alterations in original) (quoting

29 C.F.R. § 782.2(a)).  As a result, the issue for exemption from overtime purposes is not

just whether the employees affected safety of operation.  They must affect the safety of operation of commercial motor vehicles.  Id. at 1293.

The reasoning fails to consider the statute's plain language.  The mechanical substitution of "commercial motor vehicle" for "motor vehicle" implies a change greater than what Congress specifically provided.  To the extent that the regulation, as amended, would rein in the authority of the Secretary of Transportation with respect to motor carriers generally, I agree.  Such a change was clearly intended.  I do not agree though that the regulation can be used to alter the legal principle that an employee need only affect safety of operations to be exempt.  None of the SAFETEA-LU language purports to change the Secretary of Transportation's authority with respect to a motor carrier's employees or their duties.[11]

---

[11] For these same reasons, the interpretive documents published by the Department of Labor are equally unpersuasive.  The first is a generally distributed Fact Sheet.  U.S. Department of Labor, Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA) (July 2008) (Pls.' Opp'n Mem. Ex. B).  The second is a Field Assistance Bulletin, which was issued to advise the department's staff.  U.S. Department of Labor, Change in Application of the FLSA § 13(b)(1) "Motor Carrier Exemption," Field Assistance Bulletin No. 2007-2 (May 23, 2007) (Pls.' Opp'n Mem. Ex. A).  Both documents state that the exemption may be applied only if an employee's duties involved or affected a commercial motor vehicle.

These documents are unpersuasive because they propose a construction that is unsupported by the language in the SAFETEA-LU and provide no indication of sufficient reasoning.  Neither publication explains why the SAFETEA-LU requires that an employee work with a *commercial* motor vehicle in order to be exempt.  After an entity is characterized as a motor carrier (i.e., it provides transportation by commercial motor vehicle), the exemption analysis then turns to whether the employer has demonstrated that the employee's duties affect the safety of operation.

The publications alter that burden.  To illustrate, the Field Assistance Bulletin reads:
The *Safe, Accountable, Flexible, Efficient Transportation Equity Act: a Legacy for Users* (SAFETEA-LU), PL 109-59, changed the power of the Department of Transportation to set hours standards for employees of motor

20

For these reasons, I will grant the defendants' motion as to the plaintiff's claims arising on or after August 10, 2005 but before June 6, 2008.  The plain statutory language of SAFETEA-LU does not support the broader change that an employee may only be exempted if he or she affected the safety of operation of a commercial motor vehicle. The test for whether an employee is exempted continues to be whether that employee's duties affect safety of operation.  Absent clearer Congressional intent, the longstanding interpretation of which employees may be exempted should not be overturned.  The Department of Labor's regulations do not compel a different result because they are only persuasive, and I find that its interpretation conflicts with the statute itself.

### 2. The Technical Corrections Act claims

I will deny both motions for summary judgment as to any claims for overtime payments arising after June 6, 2008.  On that date, Congress passed the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. 110-244.  As its title indicates, the act made

---

carriers and motor private carriers from transportation involving the operation of "motor vehicles" to transportation involving "commercial motor vehicles."

\*       \*       \*

[W]ith the passage of SAFETEA-LU on August 10, 2005, an employee is covered by the FLSA § 13(b)(1) exemption only if that employee is engaged in transportation involving a "commercial motor vehicle."

Field Assistance Bulletin No. 2007-2.  In the first paragraph, the change is correctly summarized: under the SAFETEA-LU, the Secretary of Transportation's power extends only to those employees of those entities providing transportation involving commercial motor vehicles.  In the second paragraph though, the agency inexplicably shifts the amendment's effect from redefining "motor carrier" to re-categorizing employees.  The reasons for this change are not provided.  I do not think this is a reasonable interpretation of the statute, and given the publications' failure to explicate, I find them unpersuasive.

21

numerous corrections to the SAFETEA-LU, two of which are pertinent to this case.  First,

the pre-SAFETEA-LU definition of "motor carrier" was restored by striking "commercial

motor vehicle" and reinserting "motor vehicle."  Id. § 305(c).  This restores the Secretary

of Transportation's authority as to motor carriers.

The second change worked in the opposite direction by narrowing which

employees were covered by the Motor Carrier Act exemption.  Notwithstanding the

exemption, the Fair Labor Standards Act's overtime provisions now apply to any

"covered employee."  Id. § 306(a).  A "covered employee" is defined as:

> [A]n individual–
>
> > (1) who is employed by a motor carrier or motor private carrier  .
> > . . ;
> >
> > (2) whose work, in whole or in part, is defined–
> >
> > > (A) as that of a driver, driver's helper, loader, or
> > > mechanic; and
> > >
> > > (B) as affecting the safety of operation of motor
> > > vehicles weighing 10,000 pounds or less in
> > > transportation on public highways in interstate or
> > > foreign commerce . . . . [; and]
> >
> > (3) who performs duties on motor vehicles weighing 10,000
> > pounds or less.

Id. § 306(c).

With this change, an employee who works on or with non-commercial motor

vehicles (i.e., vehicles weighing less than 10,000 pounds) may now be entitled to overtime compensation. The employee may still qualify for overtime even if part of his or her duties involve commercial motor vehicles. Section 306(c) clearly states that the employee's work need only "in whole or in part" affect the safety of operation of vehicles weighing 10,000 pounds or less. An employee working on a 10,001 pound vehicle two days a week and a 5000 pound vehicle the remaining days of the week appears to satisfy this requirement. In short, the employees must simply perform *some* work on such vehicles.[12]

Factual issues preclude summary judgment on this point. It must be determined when and how long each plaintiff performed duties qualifying him or her to be a "covered employee." This is a fact-specific analysis of each person's activities, and the parties have not presented sufficient evidence for the court to make a ruling at this point.

### 3. Pennsylvania Minimum Wage Act (PMWA)

I will grant the defendants' motion as to the PMWA claims arising between August 10, 2005, and June 6, 2008, and deny the motion as to those claims arising after June 6, 2008. The PMWA is applied in the same way as the Fair Labor Standards Act. It also requires an employer to pay an employee one and one-half times his hourly wage for

---

[12] My decision does not mean that *any* iota of work will defeat an employee's exemption. Each employee's work hours and duties must be considered to ensure that his work with motor vehicles weighing 10,000 pounds or less is more than *de minimis*. Cf. DeAsencio v. Tyson Foods, Inc., 500 F.3d 361, 373–74 (2007) (instructing the district court to consider whether certain work activities were *de minimis*).

any hours worked overtime in a workweek.  43 PA. CONS. STAT. ANN. § 333.104(c) (West 2008).  This rule is subject to various exemptions.  See id. § 333.105.  One of these is for "[a]ny employe [sic] of a motor carrier with respect to whom the Federal Secretary of Transportation has power to establish qualifications and maximum hours of service under 49 U.S.C. § 3102(b)(1) and (2) [sic]."  Id. § 333.105(b)(7).

As the plaintiffs were exempt from the overtime provisions by virtue of the Motor Carrier Act from August 10, 2005, to June 6, 2008, they were also exempt under the PMWA.  For any claims after June 6, 2008, the PWMA provides relief only to the extent the employee is entitled to compensation under the FLSA.  Because the applicability of the Motor Carrier Act exemption as to the plaintiffs' claims for this latter period of time has not been resolved, the motions should be denied as to this part.

**C. Motion to decertify**

Rydbom Express has moved to decertify the collective action brought by the Plaintiff on behalf of himself and others similarly situated.  I will deny the motion.  Section 216(b) of the Fair Labor Standards Act permits "[a]n action . . . [to] be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  Courts have developed a two-step process for determining who is "similarly situated" to the lead plaintiff.  Harris v. Healthcare Servs. Group, Inc., 2007 U.S. Dist. LEXIS 55221, at *2 (E.D. Pa. July 31,

2007).  The first step occurs early in the litigation and is only a preliminary inquiry to see who is "similarly situated."  Parker v. NutriSystem, Inc., 2008 U.S. Dist. LEXIS 74896, at *3 (E.D. Pa. Sept. 26, 2008).  This initial certification is only conditional.

The second step occurs after discovery has occurred, and it is "a specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action."  Lugo v. Farmer's Pride, Inc., 2008 U.S. Dist. LEXIS 17565, at *8 (E.D. Pa. Mar. 7, 2008).  A higher level of proof than that used during the preliminary inquiry will be required.  Id.  The Third Circuit has approved a representative list of factors, which includes the plaintiffs' duties, the similarity of their claims, and the relief sought.  See Ruehl v. Viacom, Inc., 500 F.3d 375, 389 n.17 (3d Cir. 2007) (discussing the second phase of the FLSA certification process with respect to the Age Discrimination in Employment Act).  If the court chooses to decertify, then the remaining plaintiffs are dismissed without prejudice and are free to initiate their own suits.

The motion is moot as to the claims from August 10, 2005, to June 6, 2008, which should be dismissed as a matter of law.  As to the claims arising after June 6, 2008, I will deny the motion because the plaintiffs are similarly situated.  It is undisputed that all the plaintiffs were Rydbom Express drivers who were paid an hourly wage.  All claims are similar because they allege that Rydbom Express improperly classified every driver as exempt and failed to record his or her work times properly.  The inquiry as to each plaintiff will generally be the same: which vehicle did the plaintiff operate, and for what

25

duration of time?

Resolving the remaining claims will not be too fact-intensive to merit decertification.  Only eight plaintiffs remain, their claims turn on the same FLSA exemption, and determining whether any individual employee was entitled to receive overtime compensation is well within the court's abilities.  (Pls.' Opp'n Mem. to Decertification at 11–12 (Document #80).)  No new questions of law are foreseeable. Additionally, both the court and the litigants will benefit from the reduced litigation costs and judicial economy of moving forward through a single proceeding.  See Gallagher v. Lackawanna County, 2008 U.S. Dist. LEXIS 43722, at *21 (E.D. Pa. May 30, 2008).

**IV. Conclusion**

For the foregoing reasons, I will grant in part and deny in part the defendants' motion for summary judgment, and deny the plaintiffs' motion for summary judgment.  I will also deny the defendants' motion for decertification.